DECISION AND JUDGMENT ENTRY
{¶ 1} This administrative appeal comes before the court from the Lucas County Court of Common Pleas wherein appellant William M. Baker's administrative appeal was denied. For the reasons that follow, we affirm.
 {¶ 2} For 36 months, appellant and his family received Ohio Works First ("OWF") cash assistance from the Ohio Department of Job and Family Services ("ODJFS"). When the ODJFS notified appellant of their intent to terminate the cash assistance, appellant filed a request for a hardship extension. Said request was denied. Appellant next requested a state hearing wherein he argued that he was entitled to an extension because his wife is temporarily incapacitated and because she is a displaced worker. The hearing resulted in a decision finding that appellant was not entitled to a hardship extension because his wife's medical records show she is employable. Appellant next pursued an administrative appeal which resulted in the affirmance of the state hearing decision.
 {¶ 3} On May 5, 2005, appellant filed a notice of appeal in the Lucas County Court of Common Pleas. The court affirmed the decision of the ODJFS. Appellant now appeals setting forth the following assignments of error:
 {¶ 4} "I. The Lucas County Court of Common Pleas improperly affirmed ODJFS decision and abused its discretion because the decision was not in accordance with law and thereby the decision is not supported by reliable, probative, or substantial evidence, and relies on an incorrect application of law or rule.
 {¶ 5} "II. The decision is contrary to the weight of the evidence presented.
 {¶ 6} "III. The decision relies on an incorrect application of the ODJFS model design developed under R.C. 5101.07 as correlated to the prevention, retention and contingency program, also known as self-sufficiency contracts requirements. Particularly as it relates to intentional incorrect application of R.C. 5107.18(B), (E).
 {¶ 7} "IV. The decision relies on an incorrect application of the CDHS policies and criteria developed under ODJFS model design under R.C. 5108.08, and as to any amendments; and there [sic] application as to R.C. 5107.18 (B), (E).
 {¶ 8} "V. The decision relies on an intentional incorrect application of the CDHS standard of good cause when the decision is regarding an OWF sanction when there is no failure of compliance with the self-sufficiency contract on the part of the assistance group involved.
 {¶ 9} "VI. A prejudicial error was committed in the course of the proceedings."
 {¶ 10} Initially we note that this court has a limited function in proceedings such as this. As set forth in R.C.2506.01, appeal of a final decision of an administrative body is made to the common pleas court. Appeal of the common pleas court judgment is made to the court of appeals. R.C. 2506.04. When reviewing an administrative appeal brought pursuant to R.C.2506.01, "the common pleas court considers the `whole record,' * * * and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v. City of Youngstown Bd. of ZoningAppeals, 90 Ohio St.3d 142, 147. Our standard of review is narrow in scope and requires that the common pleas court's decision be affirmed unless we find, as a matter of law, that the decision is not supported by a preponderance of reliable, probative and substantial evidence. Smith v. Granville Twp. Bd.of Trustees, 81 Ohio St.3d 608, 613. (Citations omitted.) "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain City SchoolDist. Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 261. An abuse of discretion connotes more than an error of law or judgment; it implies that the action of the trial court was unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} In 1996, the United States Congress reformed Title IV-A of the Social Security Act, eliminating Aid to Families with Dependent Children ("AFDC") and replacing it with Temporary Assistance to Needy Families ("TANF"), a block-grant program administered through the Department of Health and Human Services. The purpose of the TANF grants is to "increase the flexibility of States in operating a program designed to — (1) provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives; (2) end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage; (3) prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and (4) encourage the formation and maintenance of two-parent families." Section 601(a), Title 42, U.S.Code.
 {¶ 12} Federal law allows state recipients of TANF grants to use a limited portion of the TANF funds to carry out state programs under other federal-block grants, most notably Title XX of the Social Security Act. Section 604(d), Title 42, U.S.Code. Any funds transferred from TANF to Title XX programs "shall be used only for programs and services to children or their families whose income is less than 200 percent of the income official poverty line." Section 604(d)(3)(B), Title 42, U.S.Code.
 {¶ 13} The state of Ohio implemented TANF through two programs: OWF under R.C. Chapter 5107 and the Prevention, Retention and Contingency program under R.C. Chapter 5108. Both of these programs are administered by the ODJFS. See R.C.5101.80(C)(7). The ODJFS has implemented these and other welfare-reform programs by entering into partnership agreements with every county in Ohio for the counties to administer the programs through their social services agencies, either directly or through third-party service providers.
 {¶ 14} Appellant's six assignments of error will be addressed together. Appellant contends that the trial court erred in affirming ODJFS's decision to terminate his OWF benefits. Specifically, appellant contends that the trial court misconstrued R.C. 5107.18 and 5108.
 {¶ 15} R.C. 5107.18 states in pertinent part:
 {¶ 16} "(A) Except as provided in divisions (B), (C), (D), and (E) of this section, an assistance group is ineligible to participate in Ohio works first if the assistance group includes an individual who has participated in the program for thirty-six months as any of the following: an adult head of household, minor head of household, or spouse of an adult head of household or minor head of household. The time limit applies regardless of whether the thirty-six months are consecutive.
 {¶ 17} "(B) An assistance group that has ceased to participate in Ohio works first pursuant to division (A) of this section for at least twenty-four months, whether consecutive or not, may reapply to participate in the program if good cause exists as determined by the county department of job and family services. Good cause may include losing employment, inability to find employment, divorce, domestic violence considerations, and unique personal circumstances. The assistance group must provide a county department of job and family services verification acceptable to the county department of whether any members of the assistance group had employment during the period the assistance group was not participating in Ohio works first and the amount and sources of the assistance group's income during that period. If a county department is satisfied that good cause exists for the assistance group to reapply to participate in Ohio works first, the assistance group may reapply. Except as provided in divisions (C), (D), and (E) of this section, the assistance group may not participate in Ohio works first for more than twenty-four additional months. The time limit applies regardless of whether the twenty-four months are consecutive."
 {¶ 18} Neither party disputes the fact that appellant exhausted his 36 months pursuant to R.C. 5107.18(A). Appellant contends there was good cause for him to reapply to participate in OWF because he was unable to find employment during his 36 months of participating in the program. Whether appellant can demonstrate good cause or not in this case is irrelevant given the fact that the remedy found in R.C. 5107.18(B) is not available to appellant until he has been out of the program for 24 months. At this point, appellant has been out of the program only 17 months.
 {¶ 19} Appellant also contends that he was entitled to an extension pursuant R.C. 5107.18(E) which allows the ODJFS to extend benefits if the 36 month period is found to be a hardship. Although the statute does not define hardship, the ODJFS application for a hardship extension lists the following criteria: (1) the applicant has an open case with the children's services board and their case plan currently prohibits employment, (2) the applicant is the primary 24 hour caretaker for a member of the applicant's family, (3) the applicant is disabled or temporarily incapacitated preventing employment, (4) the applicant is pregnant, (5) the applicant is a victim of domestic violence, (6) the applicant is chemically dependant, (7) applicant is in a post secondary education program, and (8) the applicant is a minor head of a household.
 {¶ 20} Appellant sought a hardship extension based on the fact that he and his wife are disabled and his wife is unable to work due to a medical condition. The record in this case shows that both appellant and his wife complied with program work and training requirements but were unable to find employment within 36 months. Appellant and his wife both have college degrees. Appellant, years earlier, attended two years of law school. His wife holds a masters degree in education. Appellant's wife worked as a teacher for 14 years before she left her job under contested circumstances. Their children are 16 and 18. Appellant's wife suffers from a fibroid uterus with irregular bleeding and claims she is unemployable because of this condition. Her medical records submitted into evidence state that she is employable adding that her condition will remain stable with treatment. In view of appellant's education, his wife's education, the age of their children and his wife's ability to work, we cannot say that the trial court abused its discretion in affirming the ODJFS's decision that appellant had failed to qualify for a hardship extension.
 {¶ 21} Finally, appellant contends that ODJFS failed in its R.C. 5108 duty to "[P]rovide benefits and services that individuals need to overcome immediate barriers to achieving or maintaining self sufficiency and personal responsibility." Appellant contends that ODJFS has a duty to find employment at a salary acceptable to him. In particular, appellant notes that the ODJFS failed to hire him even though he his wife submitted numerous applications. Such is not the purpose of OWF. The purpose of the program is to provide temporary relief while the participants attempt to secure employment. While OWF offers various programs to assist participants in their job searching, the ODJFS is not an employment agency. Accordingly, appellant's assignments of error are found not well-taken.
 {¶ 22} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Singer, P.J. concur.