GLASS CITY ACADEMY, INC., Appellee,

v.

CITY OF TOLEDO, Appellant.

[Cite as *Glass City Academy, Inc. v. Toledo*, 179 Ohio App.3d 796, 2008-Ohio-6391.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–07–1347.

Decided Dec. 5, 2008.

Lane D. Williamson and Jeffrey M. Stopar, for appellee.

Adam W. Loukx, City of Toledo Acting Director of Law, and John T. Madigan, Chief Counsel, for appellant.

PIETRYKOWSKI, Judge.

{¶ 1} This is an administrative appeal of an October 3, 2007 judgment of the Lucas County Court of Common Pleas in a dispute concerning whether a special-use permit should be granted to permit construction and operation of a charter school at 3322 Schneider Road in Toledo, Ohio. The court of common pleas reversed a decision of the Toledo City Council that denied the permit to appellee, Glass City Academy, Inc., for the school. Appellant, the city of Toledo, appeals the trial court judgment.

{¶ 2} The city asserts two errors on appeal:

{¶ 3} "Assignment of Error No. 1:

{¶ 4} "The trial court erred in reversing Toledo City Council's decision denying the Appellee's application for a Special Use Permit as City Council's decision was supported by reliable, probative and/or substantial evidence.

{¶ 5} "Assignment of Error No. 2:

{¶ 6} "The trial court erred in granting Appellee's request for a Special Use Permit without either remanding the matter to Toledo City Council for further proceedings or taking additional testimony."

{¶ 7} The academy is a charter school established in 2003 under R.C. Chapter 3314 with students in grades 11 and 12. In May 2006, the academy applied to the city for a special-use permit in order to build a new school facility on an undeveloped 4.1–acre lot located at 3322 Schneider Road in Toledo. The parties agree that the proposed site for the charter school is designated for "Office Commercial" use, not residential use, and that such a zoning designation permits schools, including the one proposed by appellee, by special permit only.

{¶ 8} The application for the permit was considered initially by the Toledo Plan Commission. By ordinance, the commission staff is required to review such applications, to distribute the proposed use (where necessary) to other agencies, and to prepare a staff report to both the plan commission and Toledo City Council on the proposed special use. Toledo Municipal Code 1111.0703. The staff report on the permit request is contained as part of the report of the plan commission to council. It is included in the administrative record in this appeal.

{¶ 9} The report concluded that the proposed use did not comply with the Toledo 20/20 Comprehensive Plan:

{¶ 10} "Surrounding land uses include single-family residential neighborhoods to the south and east, alzheimers and elderly care housing complexes to the north and east, and stores, shopping centers and medical offices to the north and west. *The Toledo 20/20 Comprehensive Plan designates this area for regional and*

*general commercial uses and notes that some office and multi-family uses may also be interspersed in areas with this designation. Schools are typically sited in areas designated for residential uses, rather than commercial uses, so the special use permit is not consistent with the Toledo 20/20 Plan.* However, much of the overall Foundation Park plat initially intended for offices has been developed with elderly housing and retail uses." (Emphasis added.)

{¶ 11} The staff analysis report also indicated that the city's department of development objected to issuance of the special-use permit:

{¶ 12} "The Department objects to the issuing of a special use permit for the Glass City Academy charter high school at 3322 Schneider Road. This site would be more suited for housing or the extension of the surrounding office complex. There are several vacant buildings in the area and soon to be vacant school sites better suited for this use."

{¶ 13} The Toledo Plan Commission conducted a public hearing on the permit request on August 10, 2006. In a report dated August 11, 2006, it recommended that the Toledo City Council approve the special-use permit subject to 34 conditions outlined in its report.

{¶ 14} The Zoning and Planning Committee of Toledo City Council considered the request at a hearing on September 13, 2006. Various individuals spoke at the hearing, including the academy's attorney, an appraiser, an architect, and a traffic engineer. Several homeowners spoke in opposition to the special-use permit. The administrative record also includes correspondence from neighboring property owners opposing issuance of the permit.

{¶ 15} The zoning and planning committee reported the matter to the full Toledo City Council with a unanimous recommendation that the request be denied. On October 3, 2006, the Toledo City Council considered the measure and voted unanimously against the request. The academy appealed to the Lucas County Court of Common Pleas. In a judgment entry filed on October 2, 2007, the trial court reversed the decision of the Toledo City Council. It ordered that the special-use permit be granted, subject to 34 conditions set forth in the plan commission's recommendations.

{¶ 16} Under its first assignment of error, the city contends that there was a preponderance of substantial, reliable, and probative evidence supporting the city council's decision denying the special-use permit because the proposed use is not consistent with the Toledo 20/20 Comprehensive Plan and because of evidence that the school would negatively impact surrounding property values.

{¶ 17} In *Gibraltar Mausoleum Corp. v. Toledo* (1995), 106 Ohio App.3d 80, 665 N.E.2d 273, this court recognized that a decision of an administrative body denying a request for a special-use permit is presumed valid and the burden is on

the party seeking to overturn the administrative decision denying the permit to establish that the decision is invalid. Id. at 86–87, 665 N.E.2d 273; see *Parker v. Swan Creek Twp. Bd. of Zoning Appeals,* 6th Dist. Nos. F–04–035, F–04–036, and F–04–038, 2006-Ohio-863, 2006 WL 456499, ¶ 34.

{¶ 18} In such administrative appeals, common pleas courts are to afford due deference to an administrative agency's resolution of evidentiary conflicts. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265; *Hennings v. N. Baltimore Bd. of Zoning Appeals* (March 28, 1986), 6th Dist. No. WD–85–39, 1986 WL 3745. Additionally, a common pleas court may not "blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise." *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 389 N.E.2d 1113. An administrative agency's reasonable interpretation of local zoning codes is recognized as an area of administrative expertise and is to be presumed valid. *Lamar Outdoor Advertising, Inc. v. Dayton Bd. of Zoning Appeals,* 2d Dist. No. 20158, 2004-Ohio-4796, 2004 WL 2009311, ¶ 6; *Dick v. Kelleys Island Bd. of Zoning* (June 19, 1987), 6th Dist. No. E–86–63, 1987 WL 13075.

{¶ 19} Under the terms of R.C. 2506.04, "the common pleas court may only reverse if it finds [that] the [administrative] 'decision is unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record.' R.C. 2506.04." *Parker v. Swan Creek Twp. Bd. of Zoning Appeals,* 2006-Ohio-863, 2006 WL 456499, at ¶ 34. In a subsequent appeal of the common pleas court's judgment, "our standard of review is narrow in scope and requires that the common pleas court's decision be affirmed unless we find, as a matter of law, that the decision is not supported by a preponderance of reliable, probative and substantial evidence." *Baker v. Ohio Dept. of Job & Family Servs.,* 6th Dist. No. L–05–1296, 2006-Ohio-3176, 2006 WL 1718821, ¶ 10; *Jeffrey Mann Fine Jewelers, Inc. v. Sylvania Twp. Bd. of Zoning Appeals,* 6th Dist. No. L–08–1013, 2008-Ohio-3503, 2008 WL 2700004, ¶ 16.

{¶ 20} Applications for special-use permits in the city of Toledo are governed by Toledo Municipal Code 1111.0706. The ordinance identifies "factors" that "review and decisionmaking bodies must consider" in "making decisions on proposed Special Uses." Id. The first is whether the proposed use is consistent with the Toledo 20/20 Comprehensive Plan.[1] Another is "[h]ow the proposed use

---

1. Toledo Municipal Code 1111.0706(A) provides that "[w]hether the proposed use meets the stated purpose of this Zoning Code (See Section 1101.0400)" is a criteria to be considered in deciding on whether to issue a special-use permit. Toledo Municipal Code 1101.0400 is entitled "Purpose." It provides: "This Zoning Code is intended to implement Toledo's

will affect the value of other property in the neighborhood in which it is to be located." Toledo Municipal Code 1111.0706(D).

{¶ 21} The city contends that there was substantial, reliable, and probative evidence supporting the Toledo City Council's decision to deny the special-use permit because the proposed use is not consistent with the Toledo 20/20 Comprehensive Plan and there was evidence that the school would negatively impact surrounding property values.

### Compliance with the Toledo 20/20 Comprehensive Plan

■ {¶ 22} Under Toledo Municipal Code 1111.0703, the Toledo Plan Commission staff was required to report to the Toledo Plan Commission and to city council on whether the proposed special use complied with the Toledo 20/20 Comprehensive Plan and other criteria under Toledo Municipal Code 1111.0706. The Toledo Plan Commission staff reported that it did not comply. It concluded that "[t]he Toledo 20/20 Comprehensive Plan designates this area for regional and general commercial uses and notes that some office and multi-family uses may also be interspersed in areas with this designation. Schools are typically sited in areas designated for residential uses, rather than commercial uses, so the special use permit is not consistent with the Toledo 20/20 Plan."

{¶ 23} The trial court concluded that the staff analysis report was "hardly persuasive" because the Toledo Plan Commission, despite the staff report's finding of noncompliance, recommended that the city council approve the special-use permit. However, the ultimate administrative authority on whether to issue the permit was the council, not the Toledo Plan Commission, and the council unanimously denied the request. The council followed a unanimous recommendation of the council's zoning and planning committee in denying the request.

{¶ 24} The common pleas court also reasoned that "[t]he Academy also presented testimony demonstrating that the establishment of a community school is consistent with the 20/20 Plan's stated goal of prioritizing resources into education, ensuring that young people have a good background in computers in modern technology, and improving graduation rates." In fact, the statement was part of comments by the academy's attorney at the hearing and considered general goals identified in the 20/20 comprehensive plan.

{¶ 25} The proposed site is zoned "commercial office." Appellee has not contended in administrative proceedings or on appeal that there has been a practice of the city to routinely grant special-use permits for schools on property zoned for commercial use. Rather, appellee, through counsel, admitted in

Comprehensive Plan and other adopted plans in a manner that protects the health, safety, and general welfare of the citizens of Toledo."

administrative proceedings that "many permits" had been issued by the city for schools since adoption of a new zoning code in 2004, but that they have been for sites located in residential neighborhoods. Such a history on issuance of special-use permits for schools is entirely consistent with the conclusions of the Toledo Plan Commission staff report that "[s]chools are typically sited in areas designated for residential uses, rather than commercial uses, so the special use permit is not consistent with the Toledo 20/20 Plan."

{¶ 26} Furthermore, assertion of a general goal to promote education does not address the fact that, under the 20/20 comprehensive plan, designation of an area for regional and general commercial uses typically does not allow for school use.

{¶ 27} In our view, the conclusion of the trial court that the proposed use was consistent with the Toledo 20/20 comprehensive plan is not supported by a preponderance of reliable, probative, and substantial evidence in the record. Rather, the trial court abused its discretion by failing to provide proper deference to the city's administrative expertise in determining whether the proposed use complied with the Toledo 20/20 Comprehensive Plan.

### How the Proposed Use Will Affect the Value of Other Property in the Neighborhood

{¶ 28} The city also argues that the decision to deny the permit is also supported by evidence that the school would reduce property values in the neighborhood.

{¶ 29} The proposed school is not a traditional neighborhood school that serves students from a surrounding neighborhood. Evidence in the record recognized that new traditional schools are likely to raise property values in the neighborhoods they serve. Appellee admitted at the September 13, 2006 hearing that appellee's school is different. It would not raise property values in the neighborhood because the school is not designed to draw students from the neighborhood. Appellee limited its contentions on property values to the argument that the school would not affect property values—it would neither raise nor lower neighborhood property values.

{¶ 30} Many neighboring property owners opposed the permit for the school in administrative proceedings asserting opinions that the school would cause a loss in neighboring property values. Appellee objected, both during administrative proceedings and on appeal, to consideration of lay opinion testimony of neighboring property owners on whether the proposed school would lower neighborhood property values. Appellee has contended that "generalized grievances and public opinion are not probative evidence" in an administrative adjudicatory hearing on an application for a special-use permit, citing *Heiney v. Sylvania Twp. Bd. of Zoning Appeals* (1998), 126 Ohio App.3d 391, 710 N.E.2d 725. Under *Heiney*, a

hearing on an application for a special-use permit is an adjudicatory hearing. Id. at 396, 710 N.E.2d 725. At such a hearing, witnesses must testify "about relevant facts, not their subjective and unsubstantiated opinions." Id.

{¶ 31} Ohio, however, recognizes the use of lay opinion testimony in limited circumstances. Under the owner-opinion rule, owners of real or personal property are competent to testify as to their opinion of the fair market value of their property without qualifying as experts. E.g., *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 605 N.E.2d 936, at paragraph two of syllabus; *Smith v. Padgett* (1987), 32 Ohio St.3d 344, 347–348, 513 N.E.2d 737; *Proctor v. Bader,* 5th Dist. No. 03 CA 51, 2004-Ohio-4435, 2004 WL 1879060, ¶ 30; *Cincinnati v. Banks* (2001), 143 Ohio App.3d 272, 291, 757 N.E.2d 1205. The weight given the owner's opinion is for the trier of fact. *Martin v. Lake Mohawk Property Owners Assn., Inc.,* 7th Dist. No. 06–CA–841, 2007-Ohio-6432, 2007 WL 4225592, ¶ 59; *Wurzelbacher v. Colerain Twp. Bd. of Trustees* (1995), 105 Ohio App.3d 97, 100, 663 N.E.2d 713.

{¶ 32} A series of appellate decisions have refused to expand the owners-opinion rule to permit use of lay opinion testimony from property owners where the opinion would require consideration of hearsay. *Proctor v. Hall,* 4th Dist. Nos. 05CA3 and 05CA8, 2006-Ohio-2228, 2006 WL 1195671, ¶ 36; *Proctor v. Bader,* 2004-Ohio-4435, 2004 WL 1879060 at ¶ 31; *Weir v. Miller* (April 13, 1983), 12th Dist. No. 82–04–0044, 1983 WL 4336. In each of the cases, property owners sought to offer their lay opinions comparing the value of their property to other property in eminent-domain litigation. The property owners were competent to testify as to the market value of their property, but consideration of the other properties was determined to involve other factors that were hearsay. Id.

{¶ 33} We conclude that the owner-opinion rule is not broad enough to allow lay opinion testimony on future market values based upon the future effect of proposed development of neighboring property. Courts in other jurisdictions have refused to expand the owner-opinion rule to allow for such testimony. See *Craig v. Craig* (Fla.App.2008), 982 So.2d 724, 729; *Pascale v. Cranston Zoning Bd.* (Jan. 6, 1988), R.I.Sup.Ct. No. C.A. No 87–3463, 1988 WL 1017227. The trial court did not abuse its discretion in ruling that proposed lay opinion testimony by neighboring property owners that the proposed school use would reduce future property values was not competent substantive evidence in the adjudicatory hearing.

{¶ 34} However, such testimony is not the only evidence in the record of a negative impact of the proposed school on neighboring property values. The administrative record includes correspondence by George Trombley, who identified himself as the owner of the building located next door to the proposed school

site. Trombley stated in the correspondence that he had lost two prospective purchasers of his property due to the proposed construction of appellee's school.

{¶ 35} We conclude that appellant's assignment of error No. 1 is well taken. The common pleas court abused its discretion in failing to defer to the administrative expertise of the Toledo City Council in determining whether the proposed use complied with the Toledo 20/20 Comprehensive Plan and in failing to defer to the council's resolution of evidentiary conflicts. Allowing for such deference, we find that the decision of the Toledo City Council to deny application for a special-use permit is supported by a preponderance of reliable, probative, and substantial evidence.

{¶ 36} Under its second assigned error, appellant asserts alternative arguments contending that the trial court should have conducted an evidentiary hearing itself or remanded the case to Toledo City Council to remedy any claimed deficiency in the evidence. However, R.C. 2506.03 sets forth a listing of circumstances under which a common pleas court, on administrative appeal, can allow for a hearing on appeal and introduction of additional evidence. Appellant has not contended that any of the listed circumstances apply here. Appellant failed to request an evidentiary hearing in proceedings before the court of common pleas.

{¶ 37} Alternatively, appellant argues that the trial court should have remanded this action to the Toledo City Council rather than proceed with consideration of the appeal. Appellant argues that such a remand would have permitted correction of any technical deficiencies in the evidence. While R.C. 2506.04 authorizes a court of common pleas on administrative appeal to "affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause * * * with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court," we find no abuse of discretion by the trial court in failing to remand the case. We find that appellant's assignment of error No. 2 is not well taken.

{¶ 38} On consideration whereof, we find that appellant was prejudiced from having a fair hearing. The judgment of the Lucas County Court of Common Pleas of October 3, 2007, is reversed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in the preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment reversed.

SINGER and OSOWICK, JJ., concur.